UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBIN RUYBAL,

        Plaintiff,

v.                                   Case No. 8:18-cv-2273-T-SPF

ANDREW M. SAUL,
Commissioner of the Social
Security Administration,[1]

        Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability

and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ")

decision was not based on substantial evidence and failed to employ proper legal

standards, the Commissioner's decision is reversed.

**I.      Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 181-82). The

Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 81,

98). Plaintiff then requested an administrative hearing (Tr. 116). Per Plaintiff's request,

the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 31-68). Following

the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and

---

[1] Andrew M. Saul became Commissioner of Social Security on June 17, 2019. Pursuant
to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting
Commissioner Nancy A. Berryhill as Defendant in this suit.

accordingly denied Plaintiff's claims for benefits (Tr. 10-22). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

## II.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1961, claimed disability beginning February 1, 2011 (Tr. 181).[2] Plaintiff obtained a college education (Tr. 239). Plaintiff's past relevant work experience was as an officer in the U.S. Army, which included work as a logistics officer, commander, and healthcare recruiter (Tr. 226, 239). Plaintiff alleged disability due to lupus, generalized anxiety disorder, dizziness, chronic fatigue, and wide-spread pain (Tr. 238).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through September 30, 2022, and had not engaged in substantial gainful activity since July 1, 2016, the amended onset date (Tr. 12). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: history of degenerative disc disease in the cervical, thoracic, and lumbar spines, status-post cervical fusion; history of cervical and lumbar radiculopathy; cervicalgia, migraine headaches, and torticollis; system lupus erythematosus ("SLE"); history of degenerative joint disease of the shoulders, status-post right shoulder surgery; fibromyalgia and/or polyarthritis at multiple sites; and

---

[2] Plaintiff amended her onset date to July 1, 2016 (Tr. 10, 32, 205). The amended onset date appears responsive to a prior final determination of May 11, 2011, and Plaintiff's significant work earnings prior to July 2016 (Tr. 10, 32).

polyneuropathy (Tr. 13). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work except she: requires a sit/stand option that allows her to alternate between sitting and standing positions briefly every 30 to 60 minutes throughout the workday; cannot climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs; can frequently stoop and occasionally balance, kneel, crouch, and crawl; can frequently reach, handle, finger, and feel bilaterally; must avoid concentrated exposure to extreme temperatures and excessive vibration; and must avoid all exposure to hazardous machinery and unprotected heights (Tr. 16). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 17).

Considering Plaintiff's noted impairments, background, RFC, and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work as a manager (procurement services), recruiter (personnel), and blood donor recruiter as those occupations are performed generally in the national economy (Tr. 21). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 21-22).

### III.  Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R.

§ 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.    Analysis

Plaintiff raises three claims on appeal:  (1) whether the ALJ's step four findings are supported by substantial evidence; (2) whether the ALJ provided adequate justification for rejecting her 100% VA disability rating; and (3) whether the ALJ's reasons for rejecting her treating rheumatologist's opinion are supported by substantial evidence.  Upon a thorough review of the record and the parties' submissions, the Court finds that the ALJ failed to apply the correct legal standards and the ALJ's decision is not supported by substantial evidence.

### A. Whether substantial evidence supports the ALJ's step-four findings

Plaintiff argues that substantial evidence does not support the ALJ's finding that, given her RFC for light work with a sit/stand option, she could perform her past relevant work.  Although the ALJ's decision states the finding was supported by the VE's testimony, Plaintiff asserts the hearing transcript does not reflect that because the recording ended before the ALJ posed such a hypothetical question to the VE.  Plaintiff concedes that VE testimony is not required at step four and reliance on job descriptions contained in the Dictionary of Occupational Titles ("DOT") typically provides substantial support for a step-four finding.  She argues, however, that neither the VE's testimony nor the DOT support the ALJ's finding in this case because the hearing transcript does not include the pertinent testimony and the DOT does not account for a sit/stand option.  As a result, Plaintiff contends there is no record support for the ALJ's finding and therefore a remand for further findings is warranted (Doc. 18 at 11-14).

The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff could perform her past relevant work. The Commissioner contends that while VE testimony is not required at step four, the ALJ in this case relied on both the VE's testimony and the DOT. The Commissioner also contends that Plaintiff failed to meet her burden of proof at step four because she did not allege or demonstrate that a sit/stand option precludes the performance of her past relevant work (Doc. 18 at 14-16).

At the hearing, the ALJ asked the VE to characterize Plaintiff's military and non-military past work pursuant to the DOT (Tr. 21, 57-64). Upon review of Plaintiff's work history reports and hearing testimony, the VE provided the following DOT equivalents for Plaintiff's past work: blood donor recruiter (DOT # 293.357-010, light exertion); unit clerk (DOT # 245.362-014, light exertion); management trainee (DOT # 189.167-018, light exertion); manager, procurement services (DOT # 162.167-022, sedentary exertion); and personnel recruiter (DOT # 166.267-038, sedentary exertion) (Tr. 62-63).

The ALJ then asked the VE to consider whether a person of Plaintiff's age, education, and work experience, and who was limited to medium exertional work with certain postural and environmental limitations—but did not specify a sit/stand option—could perform any of Plaintiff's past work or other work in the national economy (Tr. 64-65). In response, the VE testified that such an individual could perform Plaintiff's past work as a blood donor recruiter, manager of procurement services, personnel recruiter, and management trainee, and could perform three other jobs that existed in significant numbers in the national economy (Tr. 65-67). Next, the ALJ added a limitation for simple, routine, repetitive tasks, to which the VE responded the three other jobs would

still be available (Tr. 68). The transcript reveals that the recording of the hearing ended at the outset of the ALJ's next question (*id.*).

In his decision, the ALJ found at step four that Plaintiff was capable of performing her past relevant work as a manager (procurement services), recruiter (personnel), and blood donor recruiter, as the occupations are generally performed in the national economy (Tr. 21). In doing so, the ALJ relied on the VE's testimony that characterized Plaintiff's past relevant work pursuant to the DOT and the VE's testimony in response to his hypothetical questions (*id*). Specifically, the ALJ stated that the VE testified that an individual who had an RFC to perform light work with a sit/stand option (and all of the postural and environmental limitations contained in the ALJ's RFC assessment) would be capable of performing Plaintiff's past relevant work as generally performed in the national economy (*id.*). The ALJ also stated that while the VE testified the DOT does not contemplate the existence of a sit/stand option, the VE indicated that aspect of his testimony was based on his professional experience (Tr. 22). Based on the foregoing, the ALJ determined that Plaintiff was not disabled (*id.*).

At the fourth step of the sequential analysis, the ALJ must determine whether the claimant can perform her past relevant work.[3] 20 C.F.R. §§ 404.1520(f), 404.1560(b). "To support a conclusion that the claimant is able to return to h[er] past relevant work, the ALJ must consider all the duties of that work and evaluate the claimant's ability to perform them in spite of h[er] impairments." *Colon ex rel. Colon v. Comm'r of Soc. Sec.*, 411

---

[3] The regulations define past relevant work as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 1560(b)(1) (citing 20 C.F.R. § 1565(a)).

F. App'x 236, 239 (11th Cir. 2011) (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990)).[4] However, at this step, "[t]he burden is on the claimant to show that [s]he can no longer perform h[er] past relevant work as [s]he actually performed it, and cannot perform work of that same kind." *Id.* (citing *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986)).

An ALJ may find a claimant not disabled if she can perform her previous work as she actually performed it or if she can perform the job as ordinarily required by employers throughout the national economy. *See* Social Security Ruling ("SSR") 82-61, 1982 WL 31387, at *1-2 (Jan. 1, 1982) (stating that a claimant may retain the capacity to perform her past relevant work as she actually performed it or as ordinarily required by employers throughout the national economy). In determining whether a claimant can perform past relevant work as performed generally in the national economy, an ALJ may rely on the job descriptions contained in the DOT. *Id.* at *2 In instances in which the DOT or other vocational resource material is insufficient to determine how a particular job is usually performed, it may be necessary for an ALJ to utilize the services of a VE. *Id.*; *see also* 20 C.F.R. § 404.1560(b)(2) (recognizing that an ALJ may obtain VE testimony responsive to a hypothetical question in determining whether a claimant can meet the demands of past work as generally performed in the national economy). Thus, while an ALJ is not required to obtain VE testimony at step four, *see Lucas*, 918 F.2d at 1573 n. 2, it is within an ALJ's purview to do so. *See* 20 C.F.R. § 404.1560(b)(2).

---

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

Upon review of the parties' arguments and the ALJ's decision, the Court concludes that substantial evidence does not support the ALJ's finding that Plaintiff was capable of performing her past relevant work as those jobs are performed generally in the national economy. As indicated above, the ALJ relied on the VE's testimony to support his step-four finding (and, in turn, his finding that Plaintiff was not disabled) but the transcript from the administrative hearing does not include this testimony. Under these circumstances, the Court is unable to determine whether substantial evidence supports the ALJ's dispositive step-four finding and remand is required. *See Edwards v. Astrue*, No. 09-2120-CM-GBC, 2010 WL 2787847, at *4 (D. Kan. June 30, 2010) (recommending remand where ALJ relied on VE testimony at steps four and five because a portion of hearing transcript was missing thereby precluding judicial review), *report and recommendation adopted*, 2010 WL 2787833 (D. Kan. July 15, 2010); *Bailey v. Heckler*, 576 F. Supp. 621, 624 (D. D.C. 1984) (remanding where record was incomplete on a dispositive factual issue because there was an inadequate basis on which the court could review the ALJ's decision); *see generally*, 42 U.S.C. § 405(g) (requiring the Commissioner to file a certified copy of the transcript of the record, including the evidence upon which the findings and decision complained of are based).

A different conclusion would not be warranted had the ALJ relied on the DOT. The DOT does not address the import of a sit/stand option. As such, the DOT would not constitute substantial evidence in support of the ALJ's finding that Plaintiff was capable of performing her past relevant work with an RFC for light work and a sit/stand option. *Cf. Norman v. Colvin*, No. 3:12-cv-54-J-TEM, 2013 WL 1149266, at *5-6 (M.D. Fla. Mar.

19, 2013) (concluding that VE's testimony provided substantial evidence to support ALJ's finding that claimant could perform past relevant work as performed generally because VE addressed claimant's functional limitation unaccounted for in the DOT).

The Court is unpersuaded by the Commissioner's contention that a remand on this basis is not warranted because Plaintiff does not show or argue that her need for a sit/stand option precludes her from performing her past relevant work. That contention conflates Plaintiff's burden of proof at step four with the Court's review of the ALJ's step-four finding for substantial evidence. Equally unpersuasive is the Commissioner's assertion that it would serve no practical purpose to remand this case to have the ALJ pose the same question to the VE. The Commissioner cites cases addressing the harmless error doctrine in support of his assertion. The issue here, however, is not that the ALJ erred. Rather, the issue is an absence of record evidence. Absent a hearing transcript that reveals the ALJ's questioning of the VE about Plaintiff's ability to perform past work with an RFC for light work and a sit/stand option, there is no record evidence that supports the ALJ's finding at step four. Accordingly, the cases on which the Commissioner relies are inapposite.

**B. Whether the ALJ gave an adequate explanation for rejecting the Plaintiff's VA disability rating**

Plaintiff next argues that the ALJ failed to adequately explain his decision for giving little weight to her 100% service-connected VA disability rating (Doc. 18 at 17-19). The Commissioner counters that the ALJ properly considered the VA's decision and substantial evidence supports the ALJ's decision (*id.* at 19-21).

A decision by any other governmental agency about whether a claimant is disabled is not binding on the SSA. 20 C.F.R. § 404.1504.[5] Although such decisions are not binding on the ALJ, VA disability ratings should be considered and given great weight. *See Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 914 (11th Cir. 2015) ("A VA rating, while not binding on the SSA, is evidence that should be considered and is entitled to great weight") (citation omitted); *Boyette v. Comm'r of Soc. Sec.*, 605 F. App'x 777, 779 (11th Cir. 2015) (noting that VA disability ratings are not binding on the ALJ, but the VA ratings should be considered and given great weight). Notably, "it is legal error to superficially reject a VA disability rating and not address it on its merits because of its differing, more lenient, and non-binding standards." *Weltz v. Berryhill*, No. 8:17-cv-2860-T-AEP, 2018 WL 6716090, at *3 (M.D. Fla. Dec. 21, 2018); *see Williams v. Berryhill*, No. 8:17-cv-64-T-30AEP, 2018 WL 1321275, at *3 (M.D. Fla. Feb. 26, 2018); *Alvarez v. Comm'r of Soc. Sec.*, No. 2:15-cv-363-FtM-MRM, 2016 WL 4651373, at *4-5 (M.D. Fla. Sept. 7, 2016). When there is a 100% VA disability rating, "the ALJ must seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination." *Beshia v. Comm'r of Soc. Sec.*, 328 F. Supp. 3d 1341, 1346-47 (M.D. Fla. 2018) (citing *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x 902, 904 (11th Cir. 2016)).

---

[5] As the parties recognize, for claims filed on or after March 27, 2017, the SSA will no longer provide any analysis in its determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether a claimant is disabled. 20 C.F.R. § 404.1504. Plaintiff's claim, however, was filed prior to that date.

By letter dated December 14, 2017, the VA provided a summary of benefits Plaintiff was receiving as a result of a 100% service-connected disability rating (Tr. 2135). The VA letter also indicated that the last change to Plaintiff's disability award was effective December 1, 2106 (*id.*). It appears the VA's initial disability determination was made in 2010 based on the following disability ratings and impairments: 100% for SLE, 70% for generalized anxiety disorder with depressive disorder, 40% for right shoulder degenerative joint disease with subscapular nerve neuropathy, 30% for cervical spine intervertebral disc syndrome, degenerative arthritis, and degenerative joint disease, 30% for various gastrointestinal impairments, and 10% for five other impairments (Tr. 2139-40). The ALJ acknowledged the VA's 100% disability rating, but gave it "little weight," finding it was based on the VA's standards for disability and proved "inconsistent with [SSA]'s standards for disability, as outlined above," and was not binding (Tr. 21).

The Court finds that the ALJ's brief explanation is superficial and therefore inadequate. *See Wood v. Colvin*, 2017 WL 379473, at *3 (M.D. Fla. Jan. 6, 2017) (finding an ALJ inadequately addressed the Plaintiff's VA disability rating where his brief explanation did not give specific reasons for discounting it); *Burch-Mack v. Comm'r of Soc. Sec.*, 8:15-cv-1167-T-JSS, 2016 WL 4087477, at *4 (M.D. Fla. Aug. 2, 2016) (concluding that ALJ "superficially considered the VA's disability rating and did not engage in meaningful review of the VA's disability determination"); *Gibson v. Comm'r of Soc. Sec.*, 725 F. Supp. 2d 1347, 1351 (M.D. Fla. 2010) (determining ALJ erred by rejecting VA's disability rating because the criteria differed from the Commissioner's "without any true analysis of the basis for the VA rating"). Absent some explanation, the ALJ's conclusory

statement that the VA's disability rating was inconsistent with the SSA's disability standard "as outlined above" fails to demonstrate otherwise.[6]  Moreover, while the Commissioner is correct in noting that a remand on this basis may not be warranted if it does not affect the substantial evidence supporting the ALJ's decision (Doc. 18 at 21), because a remand is warranted on other issues, the Court declines to consider whether the ALJ's failure to adequately explain his reasons for rejecting the VA disability rating was harmless.

### C. Whether substantial evidence supports the ALJ's reasons for rejecting the opinion Dr. Ginige S. DeSilva

Plaintiff argues that the ALJ failed to state good cause for rejecting the opinion of Dr. DeSilva, her treating rheumatologist.  Plaintiff contends it is unclear whether the ALJ considered Dr. DeSilva a treating source, and the reasons he provided for according her opinion little weight are not supported by substantial evidence (Doc. 18 at 21-24).  The Commissioner counters that the ALJ provided good reasons, supported by substantial evidence, for giving little weight to Dr. DeSilva's opinion (*id.* at 26-28).

In assessing an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing 20 C.F.R. § 404.1527(b)). Typically, the ALJ must afford the opinions of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Good cause exists where: (1) the treating

---

[6] A fair reading of the decision leaves the Court unable to discern the ALJ's meaning of "as outlined above."

physician's opinion is not bolstered by the evidence; (2) the record evidence supports a conflicting finding; or (3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *Crawford*, 363 F.3d at 1159; *see also* 20 C.F.R. § 404.1527(c)(2). If an ALJ finds that the treating physician's medical opinion should be given less than substantial or considerable weight, the ALJ must clearly articulate reasons showing good cause for discounting the opinion, and those reasons must be supported by substantial evidence. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305-06 (11th Cir. 2018). The Court "will not second guess the ALJ regarding the weight the treating physician's opinion deserves so long as the ALJ articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

In this case, the ALJ found that Plaintiff's SLE and fibromyalgia were severe impairments (Tr. 13),[7] and that DeSilva had treated Plaintiff "on and off" since 2010 (Tr.

[7] SLE is a chronic autoimmune disease that causes inflammation in connective tissues. It may involve many organs and systems, including the skin, joints, kidneys, lungs, central nervous system, and blood-forming system. SLE's common symptoms include extreme fatigue, skin problems, and joint and muscle pain and weakness, and people with SLE have episodes in which the condition gets worse and other times when it gets better. United States National Library of Medicine, *Systemic Lupus Erythematosus*, https://ghr.nlm.nih.gov/condition/systemic-lupus-erythematosus (last visited Mar. 25, 2020). Fibromyalgia is a chronic condition that causes pain all over the body, fatigue, and other symptoms. The most common symptoms are pain and stiffness, fatigue and tiredness, difficulty with memory and concentration, depression and anxiety, irritable bowel syndrome, headaches, numbness and tingling in the hands and feet, and sleep problems. While anyone can get fibromyalgia, it is more common in women and in people that have certain diseases such as lupus and rheumatoid arthritis. United States National Library of Medicine, MedlinePlus, *Fibromyalgia*, https://medlineplus.gov/fibromyalgia.html (last visited Mar. 25, 2020).

20). The ALJ recounted Dr. DeSilva's opinion on Plaintiff's functional capacity, noting the rheumatologist opined Plaintiff was limited to a significantly reduced range of sedentary work, could use her hands only five percent of the workday, and was likely to miss at least three days of work a month (Tr. 20).[8] The ALJ gave the opinion "little weight," explaining that:

> [Dr. DeSilva] also admitted [s]he saw the claimant on and off since 2010, and only twice during the relevant time frame[;]
>
> [S]he also characterized the numbness the claimant purportedly gets in the lower extremities as intermittent (a term that would not ordinarily seem indicative of the significant limitations assigned by Dr. DeSilva)[;]
>
> The doctor also stated that the opinion was based, at least in part, on cognitive changes and the like, many of which were self-reported by the claimant to Dr. DeSilva. The [ALJ] has already explained that these changes are not supported by the record evidence, and any opinion deriving from the claimant's self-report i[s] inherently unreliable[; and]
>
> [T]he clinical signs/findings when the claimant *did* see Dr. DeSilva and others were modest in nature[.]

(Tr. 20).

The Court finds that the ALJ's reasons for rejecting Dr. DeSilva's opinion do not constitute good cause and/or are not supported by substantial evidence.[9] The ALJ's first

---

[8] Dr. DeSilva's opinion is set forth in a "Lupus (SLE) Residual Functional Capacity Questionnaire" dated January 21, 2018 (Tr. 2127-34).

[9] Notably, Dr. DeSilva is the only treating doctor who rendered an opinion of Plaintiff's physical abilities and limitations. The only other opinion evidence addressing the same is that provided by the state agency medical consultant, Frank Walker, M.D., who reviewed Plaintiff's claim file on reconsideration in May 2017, and opined Plaintiff retained the RFC to perform medium work (Tr. 93-95). The forms Dr. Walker completed list Plaintiff's medically determinable physical impairment(s) as only "gastritis/duodenitis,"

reason is improper. "While the length of the treating relationship is certainly relevant, and is rightly considered under the Regulations, it is a factor for making more nuanced determinations as to the quality of the medical opinion offered, and cannot be used to circumvent the 'good cause' requirement." *Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593, at *10 (M.D. Fla. Jan. 4, 2008) (citing *Lewis*, 125 F.3d at 1140, and 20 C.F.R. § 416.927(d)(2)(i)); *see Wallace v. Astrue*, No. 2:07-cv-850-WC, 2008 WL 2428926, at *5 (M.D. Ala. June 12, 2008) (explaining that an ALJ considers this factor only after determining the treating doctor's opinion is not entitled to controlling weight) (citing 20 C.F.R. § 416.927(d)(2)(i)). An ALJ, however, is not held to the "good cause" standard if the relationship between the doctor and the patient is so brief or inconsequential that it may not rightly be characterized as a "treating relationship." *Poplardo*, 2008 WL 68593, at *10.

The relationship between Plaintiff and Dr. DeSilva constitutes a substantial treating relationship.[10] As the ALJ recognized, Dr. DeSilva had treated Plaintiff since 2010. While the ALJ noted Dr. DeSilva saw Plaintiff only twice within the relevant time frame—from Plaintiff's amended onset of September 19, 2016, through the date of ALJ's decision on April 4, 2018—the record reveals Plaintiff was seen three times, albeit once by Dr. DeSilva's ARNP, before Dr. DeSilva completed the Lupus/SLE RFC questionnaire (Tr. 1863-66, 2005-09, 2118-19). The treatment notes for each visit included

which was found to be non-severe (Tr. 91, 98). The ALJ gave little weight to Dr. Walker's opinion, explaining that he found a reduced range of light work to be the appropriate RFC as it was more consistent with the record as a whole (Tr. 20).

[10] The Commissioner does not dispute that Dr. DeSilva is a treating doctor, and he asserts that "the ALJ did not suggest Dr. DeSilva was not a treating physician" ((Doc. 18 at 26).

a review of Plaintiff's history, current symptoms, and medications; findings on exam; and diagnostic assessments (Tr. 1863-66, 2005-09, 2118-19). Notably, there is no evidence that Dr. DeSilva deviated in any way from accepted medical practice. *See, e.g., Cole v. Comm'r of Soc. Sec.*, No. 8:11-cv-1836-T-33MAP, 2013 WL 440576, at *3 (M.D. Fla. Jan. 17, 2013) (finding no good cause existed to discount doctor's opinions based on a "brief" treatment history where doctor evaluated the plaintiff the longest, evaluated the plaintiff's limitations, and met with the plaintiff seven times), *report and recommendation adopted*, 2013 WL 436179; *Shuren v. Comm'r of Soc. Sec.*, No. 6:11-cv-1191-Orl-GJK, 2012 WL 4194665, at *9 (M.D. Fla. Sept. 19, 2012) (finding that ALJ's rejection of physician's opinions because "his treating relationship was only 6-8 months, consisting of thirty minute sessions that were primarily for medication review" was "not a valid basis for discounting [the physician's] opinions") (internal quotations omitted); *Cooper v. Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, at *3 (M.D. Fla. Mar. 10, 2008) (finding no legal basis for concluding that a physician who examined a patient four times over a two-month period should not be given the weight accorded a treating physician); *Poplardo*, 2008 WL 68593, at *11 (rejecting ALJ's reason for discounting physician's opinions based on a "limited" treating relationship where the plaintiff's four visits constituted a substantial treating relationship in that the visits included treatment notes and no evidence existed that the physician deviated from accepted medical practice); *Cronon v. Barnhart*, 244 F. Supp. 2d 1286, 1293 n. 21 (N.D. Ala. 2003) (finding that orthopedist who examined plaintiff three times qualified as a treating physician). For these reasons, the ALJ failed

to provide good cause to discount Dr. DeSilva's opinion based on her treating relationship with Plaintiff.

The ALJ's second and fourth reasons both suggest the ALJ discounted Dr. DeSilva's opinion as inconsistent with her own treatment notes. While that reason typically constitutes good cause, it is not here given the nature of SLE and fibromyalgia. In any event, even if those reasons constituted good cause, they are not supported by substantial evidence.

Regarding the ALJ's second reason, the ALJ does not identify the record in which Dr. DeSilva characterized Plaintiff's lower extremity numbness as intermittent (Tr. 20). It appears the ALJ was referring to Dr. DeSilva's statement that Plaintiff had neuropathy and suffered "intermittent numbness" of the fingers, hips, and feet as a result (Tr. 2129). Significantly, the signs and symptoms of fibromyalgia and SLE often are intermittent. *See* SSR 12-2p, 2012 WL 3104869, at *6 (recognizing that the signs and symptoms of fibromyalgia vary in severity over time and can wax and wane); *The Merck Manual Consumer Version,* https://www.merckmanuals.com/home/bone,-joint,-and-muscle-disorders/autoimmune-disorders-of-connective-tissue/systemic-lupus-erythematosus-sle. (last visited Mar. 26, 2020) (explaining that the joint symptoms of lupus range from intermittent to acute, and the prognosis for lupus overall tends to be chronic and relapsing, often with symptom-free periods). Moreover, even assuming intermittent numbness resulting from neuropathy was an adequate basis to discount Dr. DeSilva's opinion, it would not constitute substantial evidence in support of the ALJ's wholesale rejection of the opinion because Dr. DeSilva's opinion was not based primarily on neuropathy.

Rather, Dr. DeSilva identified other symptoms and conditions stemming from or related to Plaintiff's SLE and fibromyalgia (including arthritis, arthralgias, and fatigue), which also were a basis for her opinion on Plaintiff's functional capacity (Tr. 2127, 2130). Further, by finding that Dr. DeSilva's use of the word intermittent "would not ordinarily seem indicative of significant limitations," the ALJ appears to be substituting his opinion for that of a medical professional. *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (ALJ may not substitute his opinion for that of a doctor); *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) (same).

As for the ALJ's fourth reason, at least with regard to Plaintiff's fibromyalgia, this is not a case where "modest" clinical signs or a lack of physical findings reasonably casts doubt upon the opinion of a treating physician. *See Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 64-65 (11th Cir. 2010) (providing that "the nature of fibromyalgia itself renders over-emphasis upon objective findings inappropriate," as "a lack of objective evidence" is its "hallmark") (internal citations omitted)). As such, the ALJ's blanket statement that the "modest" clinical signs and findings noted by Dr. DeSilva and unidentified others is insufficient to support the ALJ's outright rejection of Dr. DeSilva's opinion. *See id.* at 65 ("[t]he lack of objective clinical findings is, at least in the case of fibromyalgia, . . . insufficient alone to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations."). In any event, the ALJ does not identify the "modest" clinical findings Dr. DeSilva and others noted, nor does he explain why such findings are inconsistent with her opinion (Tr. 20). Consequently, the Court is unable to determine whether this stated reason is supported by substantial evidence. *See Hubbell-Canamucio v.*

*Comm'r of Soc. Sec.*, No. 2:15-cv-21-FtM-DNF, 2016 WL 944262, at *4 (M.D. Fa. Mar. 14, 2016) (finding conclusory statements that an opinion is inconsistent or not supported by the record are insufficient to show good cause for rejecting a treating doctor's unless the ALJ articulates factual support) (citing *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272 (M.D. Fla. 2012)); *Okeefe v. Comm'r of Soc. Sec.*, No. 6:14-cv-1410-Orl-GJK, 2016 WL 362435, at *7 (M.D. Fla. Jan. 29, 2016) (Conclusory statements that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion); *Corron v. Comm'r of Soc. Sec.*, No. 6:12-cv-1623-Orl-GJK, 2014 WL 235472, at *6-7 (M.D. Fla. Jan. 22, 2014) (ALJ's statement that treating doctor's opinion was "not supported by objective medical findings and [was] inconsistent with the evidence of record when considered in its entirety" stated a good cause reason to give the opinion little weight, but ALJ's failure to articulate evidence supporting that reason precluded court from determining whether it was supported by substantial evidence); *Anderson v. Astrue*, No. 3:12-cv-308-J-JRK, 2013 WL 593754, at *5 (M.D. Fla. Feb.15, 2013) (concluding that the ALJ must do more than recite a good cause reason to reject a treating physician's opinion and must articulate evidence supporting that reason) (citing authority); *Poplardo*, 2008 WL 68593, at *11 (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand); *Paltan v. Comm'r of Social Sec.*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342, at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").

Finally, the ALJ's third reason for according little weight to Dr. DeSilva's opinion, i.e., it was based in part on Plaintiff's cognitive changes, does not undermine or provide substantial evidence for the ALJ's rejection of Dr. DeSilva's opinion on Plaintiff's physical functional capacity. Of note, Dr. DeSilva identified twelve of Plaintiff's primary symptoms, and opined thereafter that Plaintiff's symptoms were severe enough to constantly interfere with the attention and concentration required to perform simple work-related tasks (Tr. 2130-31).[11] While Dr. DeSilva stated Plaintiff had cognitive changes such as difficulty with short-term memory, concentration, and focusing (Tr. 2133), she did not identify any limitations that resulted solely from those difficulties. Moreover, with the exception of opining that Plaintiff's symptoms—only one of which was non-physical—affected her attention and concentration, all other limitations Dr. DeSilva assessed were related to Plaintiff's physical functional capacity, i.e., her ability to walk, sit, stand, remain in one position without changing positions, lift, reach, handle, and finger (Tr. 2131-32).[12]

## V.    Conclusion

Accordingly, after consideration, it is hereby

---

[11] Dr. DeSilva checked the following as Plaintiff's primary symptoms: diarrhea/constipation, headache, depression, ankle swelling, trouble sleeping, arthralgias, arthritis, heartburn, fatigue, Reynaud's Phenomenon, chest pain, and anemia (Tr. 2130).

[12] Within this section, the ALJ also stated that any opinion deriving from Plaintiff's self-reports is inherently unreliable (Tr. 20). The ALJ based that statement on the results of a neuro-psychological evaluation conducted by Abigail Ritchie, Psy.D., in June 2017 (Tr. 14, 19-20), in which the psychologist deemed test results invalid in five of thirteen areas (those related to attention, concentration, memory, and emotional functioning) due to suboptimal effort (Tr. 1996-2003). The ALJ's reliance on that report to find all of Plaintiff's self-reports unreliable, regardless of circumstances, is troubling. No other doctor found Plaintiff to be a malinger or opined that her self-reports seemed exaggerated.

ORDERED:

    1. The decision of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

    2. The Clerk is directed to enter final judgment in favor of the Plaintiff and close the case.

**ORDERED** in Tampa, Florida, on this 30th day of March 2020.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE